744 A.2d 662 (2000)
328 N.J. Super. 12
Catherine YOUSSEFI (now known as Catherine Caffrey), Plaintiff-Respondent,
v.
Manoutcherhr YOUSSEFI, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 7, 1999.
Decided February 3, 2000.
*663 Victor F. Zambelli, Piscataway, for defendant-appellant.
Johnstone, Skok, Loughlin & Lane, Westfield, for plaintiff-respondent (William V. Lane, of counsel and on the brief).
Before Judges SKILLMAN, NEWMAN and FALL.
The opinion of the court was delivered by FALL, J.A.D.
In this matrimonial matter, defendant, Manoutcherhr Youssefi, appeals from entry of a post-judgment order entering judgment against him for $25,124.62,[1] consisting of child support arrears ($11,187.70); defendant's share of uninsured medical expenses and medical insurance costs of the children for the years 1992 through 1996 ($6,750.92); previously-ordered unpaid attorney fees ($5,000); a previously-ordered unpaid lump sum due plaintiff ($2,000); and defendant's share of the appraisal costs incurred upon sale of the marital domicile ($186). We affirm.
The parties were divorced on May 23, 1988 in New Jersey after a marriage of approximately nineteen years. Three children were born of the marriage. The parties agreed on all issues except the equitable distribution of two oriental rugs and counsel fees. On the issues of support, the parties agreed defendant would pay $150 per week in child support, allocated $50 per week per child, plus $150 per week in alimony until a jointly-owned parcel of real estate was sold, when the alimony would increase to $250 per week for a period of four years. At the end of the four-year period, alimony would terminate if plaintiff obtained her bachelor's degree; if not, alimony would continue at $150 per week for an additional year, terminating thereafter.
Child support and alimony payments were to be paid by defendant through the Union County Probation Department. Uncovered medical expenses and the costs of medical insurance for the children would be borne by the parties in proportion to their respective incomes.
*664 The judge took testimony on the oriental rugs, found they were exempt as a premarital asset, and awarded them to defendant. The judge also required defendant pay $6,600 to plaintiff in attorney fees.
Thereafter, a consent order was entered on September 17, 1992, memorializing a settlement of outstanding issues raised by plaintiff in a post-judgment application. The relevant elements of that consent order essentially provide:
 Plaintiff's claim for alimony arrears and defendant's claim for overpayment of alimony are dismissed;
 Probation shall vacate any alimony arrears shown on its records;
 Effective July 31, 1992, all child support arrears shown on probation's records are vacated;
 The child Sylvia, born on December 14, 1971, is emancipated;
 Defendant will continue to pay child support at the rate of $50 per week per child for the children Elijah, born April 19, 1980, and Eric, born February 27, 1982, through Union County Probation Department;
 Paragraph 7 states "That the afore-mentioned amount of Child Support to be paid is pursuant to the Judgment of Divorce, and is without prejudice to either Plaintiff or Defendant having the right to make application to this Court for an increase or decrease of child Support, together with an increase or decrease in the percentage amount each Party is hereunder obligated to contribute toward Medical Insurance premiums for the children and uninsured or unreimbursed Medical expenses for said children;"
 Defendant gives his consent to plaintiff to move with the children to the States of Florida or Utah;
 All claims by either party for reimbursement for past college costs of Sylvia are dismissed;
 All claims by plaintiff for medical insurance or unreimbursed medical expenses of the children prior to August 13, 1992 are dismissed;
 Paragraph 13 states "For and in consideration of the foregoing, it is Ordered that defendant shall pay to Plaintiff the sum of Two Thousand Dollars ($2,000.00) within sixty days of the date of this Order;"
 The Westfield marital domicile was to be conveyed by defendant to plaintiff free and clear of all claims by defendant;
 Defendant would contribute 73% toward the costs of maintaining the children on plaintiff's husband's medical insurance coverage;
 Defendant would contribute 73% toward the costs of unreimbursed medical expenses of the children, and as to both the medical insurance and unreimbursed medical, and "[s]hould defendant fail to reimburse Plaintiff within this thirty (30) day period, Plaintiff shall have leave to file an ex parte application to the Court for enforcement;"
 Defendant shall pay $250 for the cost of an appraisal; and
 Plaintiff may make application to the court for an order compelling defendant to contribute to her attorney fees and costs on the application.
Upon another post-judgment application by plaintiff and a cross-motion by defendant, an order was entered on January 25, 1993, increasing defendant's child support obligation to $100 per week per child, effective December 14, 1992; requiring defendant pay the $2,000 previously ordered in the September 17, 1992, consent order within ten days or a bench warrant for his arrest shall issue; and ordering defendant pay the $5,000 balance due on the previously-ordered attorney fee.[2] Defendant *665 appealed that order, and, in an unreported opinion decided March 23, 1994, we affirmed.
Sometime in 1995, plaintiff moved to Utah with the children and defendant moved to France. An order was entered on April 16, 1996, which provides:
The obligor resides in France. The obligee resides in the State of Utah. The State of Utah, Department of Human Services has advised that the obligor is making payments through their agency. The State of Utah has requested dismissal of our case. Union County Probation is to close its records and interests in this matter. Any arrears owed obligee are to be reserved off ACSES. The account is to be closed with zero balances.
The record suggests the impetus for that order was communication between Utah's Department of Human Services and Union County's Probation Department on the issue of collection. Thereafter, defendant continued paying child support through Utah's Department of Human Services, albeit not the full amount due, Utah's records showing $11,257 in child support arrears as of July 1998. There were no applications in Utah to modify the provisions of the New Jersey support orders.
On or about August 28, 1998, plaintiff filed a post-judgment motion in New Jersey seeking enforcement against defendant of child support arrears, unpaid medical insurance contributions, unpaid unreimbursed medical expense contributions, and various unsatisfied monetary obligations, all accruing pursuant to the September 17, 1992, and January 25, 1993, orders. In her moving papers, plaintiff certified that subsequent to the September 17, 1992, consent order defendant failed to comply with its terms as to child support, medical insurance and unreimbursed medical contributions, the $2,000 payment required by paragraph 13 of the September 17, 1992, order, his share of the ordered appraisal amount, and the counsel fee award of $5,000. Plaintiff also stated that, after the increase in child support contained in the January 25, 1993, order, defendant fell further behind in his child support payments.
A copy of plaintiff's motion and moving papers was mailed to defendant at his post office address in France by registered mail on October 16, 1998.
Meanwhile, defendant was corresponding with Utah's Department of Human Services, contesting the amount of arrears shown on its ledger, and contending child support should cease when the youngest child graduates from high school. In a December 4, 1998, letter to defendant, sent to the same address as were the motion papers, the Utah Department of Human Services replied to defendant, in part, as follows:
On page 2 of Ms. Johnson's [of the Utah Department of Human Services] letter it states that your monthly due child support would cease when your youngest child graduates from high school. That would be correct if your order had been issued in Utah. However, because your order was issued in New Jersey, the obligation will continue for both children until the order is amended specifying the conditions that terminates your monthly obligation for each child. Your New Jersey child support order does not include wording regarding an end date for monthly due child support for neither Elijah nor Eric. As I previously stated in my letter of August 24, 1998, Ms. Layton discussed your order with the New Jersey Interstate Child Support Central Registry and was informed that New Jersey child support orders should include the age of majority or conditions of emancipation in the order; which your order does not.

Plaintiff's motion, originally scheduled for October 9, 1998, then November 20, 1998, was adjourned to January 8, 1999, *666 and, by letter dated December 17, 1998, sent by both registered and regular mail, plaintiff's counsel advised defendant of the new hearing date and enclosed another copy of all motion papers. By certification dated December 18, 1998, plaintiff's counsel certified service of the motion papers was made upon defendant "pursuant to Article 10 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention)."
On January 8, 1999, the matter was heard by Judge Lyons. Defendant did not appear nor did he file any responsive papers or objection. On the jurisdiction issue, Judge Lyons stated:
The Court was concerned with its jurisdiction, however, the court has researched the Hague Convention and the treaty that follows. Under that ... treaty ... and under Article 10 [it provides] that the state of destination, and in this case France, does not object with service by mail, judicial documents can be sent directly by mail.
This motion was served on the husband through registered mail as certified by plaintiff's counsel's office. In addition, the court has determined that France is a signatory and does not object to such service under this statute. [The] Court has also checked with the probation office in Utah which collects these funds to determine that the amount is accurate in the judgment. Given the arrearages here and the fact that the matter is not contested, the court will fix the judgment and enter the judgment.
In the order memorializing his decision, Judge Lyons entered judgment against defendant in the amount of $25,124.62 and awarded counsel fees to plaintiff in the amount of $1,959.89.
Upon being served with a copy of the notice of appeal, Judge Lyons amplified his decision pursuant to R. 2:5-1(b) in a letter opinion dated February 25, 1999, stating, in pertinent part:
Since 1994, however, the husband has been in arrears with respect to the payments ordered as well as continuing child support. The wife submitted a Certification setting forth the violations of the existing Order in great detail with support, as well as the current figure from the Utah Department of Human Services, Office of Recovery Services setting forth the child support arrearages. Evidently, the collection of the child support was transferred to Utah at some time when Mrs. Youssefi moved there from New Jersey.
The matter came before the Court and was unopposed by Mr. Youssefi who did not appear. Mr. Youssefi is a foreign national and a resident of France. His business address, however, is in Switzerland. The Motion, together with the Affidavit of Service, shows that he was served by mail in France. The initial question addressed by the Court was whether or not this service was effective service. The Court noted that the defendant had been served pursuant to Article 10 of the Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters (the "Hague Convention"). Article 10 of the Hague Convention provides a mechanism by which a plaintiff in the United States can effectuate service of process on foreign defendants. The Court noted that Article 10(a) states, "Provided the State of destination (France) does not object, the present Convention shall not interfere with (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, ..." The Court took judicial notice that France is a signatory to the Hague Convention and has not objected. The Court also noted that New Jersey Court Rule 4:4-4(b)(1)(B) provides that in personam jurisdiction may be obtained over any defendant by personal service outside the United States if done in accordance with any governing *667 treaty. The Hague Convention is the governing treaty at issue.
The Court also noted that the Appellate Division has upheld service of process by mail to a foreign defendant in Gapanovich v. Komori Corp., 255 N.J.Super. 607, 605 A.2d 1120 (App.Div. 1992). The Court therefore found that service was effective.
In addition, the Court reviewed the Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971) standard concerning the application for legal fees, as well as the fact that N.J.S.A. 2A:34-23(a) requires a party defaulting in child support payments to pay attorney's fees in an action to enforce such Order unless the Court finds circumstances that would make this payment unjust. The Court found no such circumstances here. In addition, in reviewing the Williams standards with respect to attorney's fees sought that did not relate to child support, the Court noted that since 1994, no payments had been made, evidencing a lack of good faith on the defendant's part. Accordingly, the Court entered an Order providing for attorney's fees after reviewing the appropriate Affidavit of Services under R. 4:42-9(b).
On appeal, defendant presents the following issues for our consideration:
POINT I
SINCE BOTH PARTIES TO THIS ACTION ARE AND WERE DOMICILED OUTSIDE OF NEW JERSEY, NEW JERSEY SHOULD NOT HAVE ASSUMED JURISDICTION IN THIS MATTER.
POINT II
IN PERSONAM JURISDICTION BY SUBSTITUTED OR CONSTRUCTIVE SERVICE WAS NOT OBTAINED IN THIS MATTER.
POINT III
JUDGMENT OF DIVORCE AND SUBSEQUENT AMENDING ORDERS DO NOT INDICATE WHEN MINOR CHILDREN OF MARRIAGE WILL BE EMANCIPATED AND WHEN CHILD SUPPORT WILL CEASE.

I
Defendant contends the motion judge erred in considering plaintiff's application because the court lacked jurisdiction since both parties to the action are domiciled outside New Jersey.
Although not mentioned by either party, the Uniform Interstate Family Support Act (UIFSA), N.J.S.A. 2A:4-30.65 to -30.123, enacted in New Jersey on March 5, 1998, "provides a comprehensive framework for dealing with the jurisdictional problems at hand." Peace v. Peace, 325 N.J.Super. 122, 127, 737 A.2d 1164 (Ch. Div.1999). Like New Jersey, Utah has also adopted UIFSA and codified it in its state statutes. U.C.A. §§ 78-45f-100 to -901. Congress mandated that, by January 1, 1998, every state must adopt UIFSA, including any amendments, to provide unity and structure in each state's approach to the modification and enforcement of child support orders. 42 U.S.C.A. § 666(f). Accordingly, the question of jurisdiction in this case is governed by UIFSA.
"Under UIFSA, jurisdictional disputes are resolved by reference to the concept of `continuing, exclusive jurisdiction.'" Peace, supra, 325 N.J.Super. at 128, 737 A.2d 1164; N.J.S.A. 2A:4-30.72. Where a state has issued a support order and that state remains the residence of the obligor, individual obligee, or child beneficiary, it has continuing, exclusive jurisdiction over the child support order, unless the parties have filed written consents with the issuing state for another state to assume continuing, exclusive jurisdiction. N.J.S.A. 2A:4-30.72 provides in pertinent part:
a. A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a child support order:

*668 (1) as long as this State remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
(2) until all of the parties who are individuals have filed written consents with the tribunal of this State for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.
b. A tribunal of this State issuing a child support order consistent with the law of this State may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this act or a law substantially similar to this act.
c. If a child support order of this State is modified by a tribunal of another state pursuant to this act or a law substantially similar to this act, a tribunal of this State loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this State and may only:
(1) enforce the order that was modified as to amounts accruing before the modification;
(2) enforce nonmodifiable aspects of that order; and
(3) provide other appropriate relief for violations of that order which occurred before the effective date of the modification.
d. A tribunal of this State shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to this act or a law substantially similar to this act.
This section is recognized as one of the most crucial provisions of UIFSA. John J. Sampson, Uniform Interstate Family Support Act, 27 Fam. L.Q. 93, 120 (1993). It establishes the principle that, except in narrowly defined circumstances, the issuing tribunal retains continuing, exclusive jurisdiction over the child support order. Ibid. However, "[i]f all parties and the child reside elsewhere, the issuing state loses its continuing, exclusive jurisdictionwhich in practical terms means the issuing tribunal loses its authority to modify its order." Id. at 120-21 (footnotes omitted).
From the record before us, we conclude Utah has never modified the child support orders issued by New Jersey; Utah simply enforced those orders. Although not clear from the record, we presume the New Jersey support order was registered for enforcement in Utah. U.C.A. §§ 78-45f-601 (registration of order for enforcement); U.C.A. §§ 78-45f-602 (procedure to register order for enforcement). The order dated February 21, 1996, relieved the Union County Probation Department of its obligation to collect support monies from defendant and disburse them to plaintiff; it did not constitute a relinquishment of enforcement jurisdiction.
Because none of the parties reside here, New Jersey does not have continuing, exclusive jurisdiction to modify the support obligation. N.J.S.A. 2A:4-30.72a(1). However, since the New Jersey order is the only order setting defendant's child support obligation, it controls and must be recognized. N.J.S.A. 2A:4-30.74(a). A responding state, defined as "a state in which a proceeding is filed or to which a proceeding is forwarded for filing from an initiating state under this act or a law substantially similar to this act ....[,]" must recognize the order even though all parties have left the issuing state. N.J.S.A. 2A:4-30.65.
Even though New Jersey lost continuing, exclusive jurisdiction to modify its child support order, it retained jurisdiction to enforce its child support order. N.J.S.A. 2A:4-30.72(c) explicitly provides that the original issuing state retains the power to enforce the collection of amounts accruing before a modification, to enforce nonmodifiable aspects of the order, and to provide for other appropriate relief for premodification violations of that order. *669 The official comment to section 205 of UIFSA, codified in New Jersey's statutes at N.J.S.A. 2A:4-30.72, states: "nothing in this section is intended to deprive a court which has lost continuing, exclusive jurisdiction of the power to enforce arrearages which have accrued during the existence of a valid order." Sampson, supra, at 121.
If an issuing tribunal does not lose jurisdiction to enforce its existing order when it has been modified in another state, it follows the issuing tribunal retains jurisdiction to enforce its order if no modification has taken place and no other jurisdiction has assumed continuing, exclusive jurisdiction. See Linn v. Delaware Child Support Enforcement, 736 A.2d 954, 964 (Del.1999) (interpreting statutory provisions identical to those in New Jersey and finding that, under UIFSA, regardless of whether issuing state retained continuing, exclusive jurisdiction to modify its child support order, the court retained jurisdiction to enforce its original order; and, because issuing state does not lose jurisdiction to enforce its existing order when it has been modified in another state, issuing state retains jurisdiction to enforce its order if no modification has taken place and no other jurisdiction has assumed continuing, exclusive jurisdiction).
Under these facts, we conclude New Jersey had jurisdiction to enforce its child support orders, as well as other provisions contained in those orders.

II
Defendant argues in personam jurisdiction was not obtained over him in this matter. Our review of the record in the light of the written arguments advanced by the parties discloses that this issue is without merit and does not warrant extensive discussion in this opinion. R. 2:11-3(e)(1)(E). The children were born in New Jersey, and both parties resided with them in this State from their births until they divorced in 1988, providing a sufficient basis for the exercise of in personam jurisdiction. Service of post-judgment motion papers is governed by R. 1:5-1(a), R. 1:5-2, and R. 1:5-4(a), not R. 4:4-4 as referenced by the motion judge. However, we are that satisfied service of the motion papers upon defendant was properly effected in accordance with applicable provisions of the Hague Convention.

III
Defendant contends child support arrearages were improperly calculated through August 1998 because the child Elijah was emancipated on April 19, 1998, the date of his eighteenth birthday. He also argues the New Jersey support orders do not contain an age at which the children are emancipated. These arguments are clearly without merit and do not require extensive discussion. R. 2:11-3(e)(1)(E). The issue of emancipation was not before the motion judge. However, we note that under New Jersey law there is no fixed age when a child becomes emancipated. Wanner v. Litvak, 179 N.J.Super. 607, 612, 433 A.2d 445 (App.Div.1981). Our Supreme Court has discussed the issue of emancipation, as follows:
In general, emancipation is the act by which a parent relinquishes the right to custody and is relieved of the duty to support a child. Emancipation can occur upon the child's marriage, induction into military service, by court order based on the child's best interests, or by attainment of an appropriate age. Although emancipation need not occur at any particular age, a rebuttable presumption against emancipation exists prior to attaining the age of majority, now 18. Attainment of age 18 establishes prima facie, but not conclusive, proof of emancipation. Whether a child is emancipated at age 18, with correlative termination of the right to parental support, depends upon the facts of each case.

[Newburgh v. Arrigo, 88 N.J. 529, 543, 443 A.2d 1031 (1982) (citations omitted).]
*670 Defendant failed to interpose a defense to enforcement based upon the alleged emancipation of Elijah. Additionally, only a small portion of the $25,124.62 judgment is attributable to child support for Elijah subsequent to his eighteenth birthday on April 19, 1998. Should he choose to do so, defendant has the right to make an application to the trial court seeking emancipation, although we express no opinion on that issue.
We also find defendant's arguments concerning the award of attorney fees lacking merit. Judge Lyons made sufficient findings on this issue in his written opinion.
Affirmed.
NOTES
[1] In her certification in support of the enforcement motion, plaintiff requested judgment in the amount of $25,194.62. That amount was partially based on child support account records from the Department of Human Services Office of Recovery Services of the State of Utah showing accrued child support arrears due in the amount of $11,257 as of July 31, 1998. While the record does not provide an explanation for the reduced amount of the judgment entered, the motion judge commented at the January 8, 1999 motion hearing that he "checked with the probation office in Utah which collects these funds to determine that the amount is accurate in the judgment." We therefore surmise the discrepancy between the amount sought and the amount of the judgment is based on a determination by the judge of the precise amount of child support arrears due.
[2] The record does not reflect whether the $5,000 counsel fee was a portion of the $6,600 counsel fee defendant was ordered to pay in the final judgment, or was contained in a separate order arising from that portion of the September 17, 1992 order permitting plaintiff to apply for a contribution toward her counsel fees and costs.