753 A.2d 764 (2000)
332 N.J. Super. 381
James TEARE, Plaintiff,
v.
Patricia BROMLEY, Defendant. Patricia Bromley
v.
James Teare.
Patricia Bromley Paige
v.
James Teare.
Superior Court of New Jersey, Chancery Division, Family Part, Burlington County.
Decided March 10, 2000.
*765 James Teare, plaintiff pro se.
Mildred J. Hamilton, Mount Holly, for defendant.
LIHOTZ, J.T.C. (temporarily assigned J.S.C.)
The issue presented for determination by the court is which state's order fixes the non-custodial parent's obligations to continue to pay child support after a child reaches the age of majority, but remains a full time college student.
Stephanie Bromley, born on September 1, 1981, is the child of James Teare and Patricia Bromley.[1] Ms. Bromley, a New Jersey resident filed this application seeking child support from Mr. Teare, now a Maryland resident, because Stephanie is a full time college student; notwithstanding the entry of a Maryland order terminating Mr. Teare's support obligation as of Stephanie's eighteenth birthday. The procedural history in this case is important to the court's determination.
When Stephanie was born, these unmarried parties, although not living together, resided in New Jersey. Mr. Teare filed a Complaint in the Juvenile Domestic Relations Court of Burlington County, New Jersey, seeking an adjudication that he was Stephanie's father, setting his parenting time and amending the child's birth certificate to include his name. After hearing, the court entered an order on December 1, 1981, adjudicating paternity, fixing child support and providing time between father and daughter. A subsequent court order dated December 10, 1981, included the prior provisions and added a requirement that Mr. Teare's name be added to an amended birth certificate. Orders by the same court were entered November 5, 1982 and January 27, 1983, increasing parenting time. These requests were initiated by Mr. Teare in New Jersey. The Juvenile Domestic Relations Court became part of the Superior Court, Chancery Division and additional orders addressing support enforcement were entered by the Superior Court on January 15, 1986, August 12, 1986 and October 31, 1986. These requests were presented by Ms. Bromley and responded to by Mr. Teare. An enforcement order dated July 1, 1987 included the issuance of a bench warrant because Mr. Teare failed to appear and had accumulated an arrearage in support. This is the first time Mr. Teare, although served, did not appear in New Jersey.
At some point in the litigation, Mr. Teare moved to Maryland. Ms. Bromley's Uniform Reciprocal Enforcement of Support Act [hereinafter URESA] petition dated April 23, 1987 sought enforcement of *766 New Jersey's child support order. The request was transmitted to Anne Arundel County, Maryland, the county of residence of Mr. Teare. The State of Maryland, Department of Human Resources received the order on May 6, 1987 and scheduled a hearing on July 16, 1987. Thereafter, the Circuit Court ordered on August 3, 1987 that child support be paid by Mr. Teare through the local Domestic Relations Division. Through a subsequent URESA transmittal, support was increased by the Maryland Court in its order of September 1, 1994. Then, by administrative directive the Maryland Department of Human Resources closed its file emancipating Stephanie Bromley upon her eighteenth birthday by memo dated November 10, 1999.
Ms. Bromley, on November 1, 1999, renewed her request for support by filing a complaint seeking payment because Stephanie is an unemancipated full time college student. Mr. Teare (the designated plaintiff in the consolidating cases), asserts her request must be dismissed. He argues, New Jersey's transmittal of the order to Maryland twelve years ago coupled with Maryland's modification of that support order, gives Maryland exclusive jurisdiction. Maintaining that New Jersey has no subject matter jurisdiction, no personal jurisdiction and further that Ms. Bromley has submitted to Maryland's jurisdiction, he seeks dismissal of her Complaint.
Ms. Bromley contends that New Jersey's law remains the applicable law with respect to Stephanie's support. Because Maryland's law differs from that of New Jersey, a determination of the controlling jurisdiction defines the extent and nature of Mr. Teare's child support obligation for Stephanie.
The last order addressing child support (prior to the administrative directive terminating support) was entered in 1994 by Maryland after Ms. Bromley filed a URESA request for an increase. That statute found at N.J.S.A. 2A:4-30.24-.64 is now repealed. Although innovative at its inception, results under URESA proved to be far from uniform. When faced with inter jurisdiction support disputes, inconsistent results abound. It was possible that two different orders were active simultaneously in two different states governing the same obligor and the same child. Inconsistent dispositions for enforcement occurred. Overall uncertainty prevailed. See, e.g., Banks v. Banks, 221 N.J.Super. 282, 534 A.2d 419 (App.Div.1987). Thus, Congress seeking to develop more effective and efficient interstate support collection laws also sought to curtail confusion in the interstate support process by enacting the Uniform Interstate Family Support Act, [hereinafter UIFSA]. Congressional mandate required adoption of UIFSA and all its approved amendments by each state to assure "unity and structure in each state's approach to the modification or enforcement of child support orders." 42 U.S.C.A. § 666(f). New Jersey adopted UIFSA on March 5, 1998 under N.J.S.A. 2A:4-30.65-30 to N.J.S.A. 2A:4-30.65-30.123.
UIFSA's statutory concepts direct consistent treatment by each tribunal addressing support modification and enforcement. To achieve this objective the Act establishes "continuing, exclusive jurisdiction" and one "controlling order", thus avoiding multiple co-existing orders in different states.
Mr. Teare's argument that Maryland has sole jurisdiction is bottomed on UIFSA's requirement that no new order can be established if an order entitled to recognition currently exists. N.J.S.A. 2A:4-30.72(d). He argues that New Jersey's order was transferred to Maryland. Maryland ceased support collection, therefore, New Jersey cannot now enter another order reactivating support.
"Under UIFSA, jurisdictional disputes are resolved by reference to the concept of `continuing, exclusive jurisdiction'." Peace v. Peace, 325 N.J.Super. 122, 128, 737 A.2d 1164 (cited by Youssefi v. Youssefi, 328 N.J.Super. 12, 20, 744 A.2d 662 (App.Div. *767 2000)). When faced with numerous prior support orders, the reviewing tribunal must identify whether it holds continuing, exclusive jurisdiction. UIFSA discusses continuing, exclusive jurisdiction at N.J.S.A. 2A:4-30.72 which provides:
a. A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a child support order:
(1) as long as this State remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
2) until all of the parties who are individuals have filed written consents with the tribunal of this State for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.
b. A tribunal of this State issuing a child support order consistent with the law of this State may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this act or a law substantially similar to this act.
c. If a child support order of this State is modified by a tribunal of another state pursuant to this act or a law substantially similar to this act, a tribunal of this State loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this State and may only:
(1) enforce the order that was modified as to amounts accruing before the modification;
(2) enforce nonmodifiable aspects of that order; and
(3) provide other appropriate relief for violations of that order which occurred before the effective date of the modification.
d. A tribunal of this State shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to this act or a law substantially similar to this act.

[N.J.S.A. 2A:4-30.72.]
Thus, a state that issues an order retains continuing, exclusive jurisdiction if it remains the residence of the obligor, the obligee or the child unless the parties have issued a written consent to that issuing state or another state requesting it to assume continuing, exclusive jurisdiction. N.J.S.A. 2A:4-30.72(a)(2).
Since it is possible under UIFSA to have two states with the authority of continuing, exclusive jurisdiction, the reviewing tribunal must then determine which state issued the "controlling order" pursuant to N.J.S.A. 2A:4-30.74. The state with the controlling order is the only state retaining jurisdiction to modify that order. This requirement found at N.J.S.A. 2A:4-30.74 provides:
b. If a proceeding is brought under this Act and two or more child support orders have been issued by tribunals of this State or another state with regard to the same obligor and child, a tribunal of this State shall apply the following rules to determine which order to recognize for purposes of continuing, exclusive jurisdiction:
(1) if only one of the tribunals would have continuing, exclusive jurisdiction of this Act, the order of that tribunal controls and shall be so recognized;
(2) if more than one of the tribunals would have continuing, exclusive jurisdiction under this act, an order issued by a tribunal in the current home State of the child shall be recognized, but if an the current home State of the child shall be recognized, but if an order has not been issued in the current home State of the child, the order most recently issued controls and should be recognized.
(3) If none of the tribunals would have continuing, exclusive jurisdiction under this Act, the tribunal of this State having jurisdiction over the parties *768 shall issue a child support order which controls and shall be recognized.
...
(d) the tribunal that issued the controlling order that shall be recognized as controlling under Subsections A., B. or C. of this section is the tribunal that has continuing, exclusive jurisdiction.

[N.J.S.A. 2A:4-30.74 b-d.]
An analysis of the facts at hand shows that New Jersey issued the initial child support order December 1, 1981 and subsequently modified the child support by orders on January 15, 1986, August 12, 1986 and October 31, 1986. New Jersey remains the state of residence of the obligee and the child. Maryland, too, issued orders enforcing New Jersey's orders and then modifying the amount of support on September 1, 1994. Maryland remains the state of residence of the obligor. By definition, under UIFSA both New Jersey and Maryland have continuing, exclusive jurisdiction. Therefore, absent written consent contemplated by the statute designating one state's control, this court must determine which state issued the controlling order.
Plaintiff submits several arguments in support of his application to dismiss. First, he maintains Maryland issued the most recent order, therefore, that order controls the status of the proceedings. Second, he suggests modification of a New Jersey support order by Maryland strips New Jersey of continuing, exclusive jurisdiction to modify the current Maryland order. Third, he proffers that the current order is the November 1, 1999 memorandum terminating support. He proffers that this is an order issued under UIFSA which eliminates New Jersey's continuing, exclusive jurisdiction. In the alternative, he posits that Ms. Bromley consented to Maryland jurisdiction, thus relieving New Jersey of any ability to act. Finally, he asserts Stephanie is emancipated. Each argument will be addressed by the court.
Defendant contends that since Maryland issued the most recent order, it controls the status of this proceeding. The concept of the most recent order controlling the extent and nature of support is not supported by UIFSA's definition of "controlling order." The fact that the most recent order was entered in Maryland does not mean Maryland issued the controlling order. As set forth above, two states could have continuing, exclusive jurisdiction. If a state with continuing, exclusive jurisdiction is not considered the home state of the child an examination of the most recent order would be necessary to define the controlling order. N.J.S.A. 2A:4-30.74b(2). Since Stephanie never left New Jersey, it remains her home state. The mere fact that Maryland was the last state to issue an order is of no consequence.
So too, Maryland's modification of an order originating in New Jersey does not by itself divest New Jersey of its continuing, exclusive jurisdiction. URESA enforcement actions never eliminated the original state's jurisdiction to enforce or modify prior orders. Under the provisions of UIFSA, an issuing state also retains the right to enforce its orders (See Youssefi, 328 N.J.Super. 12, 20, 744 A.2d 662); and the continuing, exclusive jurisdiction to modify its orders is lost only if another state modified the order pursuant to UIFSA's provisions or a law "substantially similar to this act."
Defendant suggests that the memorandum dated November 1, 1999 is such an order entered under UIFSA which New Jersey must recognize pursuant to N.J.S.A. 2A:4-30.72d.
The statute defines "Support order" as "a judgment, decree, or order, whether temporary, final or subject to modification, for the benefit of a child, a spouse, or a former spouse, which provides for monetary support, health care coverage, arrearages, or reimbursement, and may include related costs and fees, interest, income withholding, attorney's fees and other relief." *769 N.J.S.A. 2A:4-30.65. Further, "Tribunal" means "a court, administrative agency, or quasi-judicial entity authorized to establish, enforce, or modify support order or to determine parentage." Id.
The document in question was issued from the Circuit Court for Anne Arundel County, Domestic Relations Division, Enforcement Unit after the date of enactment of UIFSA. This agency, under the auspices of the Domestic Relations Court, functions to effectuate support enforcement. This satisfies the tribunal definition as it is an administrative agency authorized to enforce a support order. However, the document clearly labeled "Memorandum" fails to rise to the level of a "Support order"; it is not a "judgment, decree or order." The purpose of the memorandum appears to be notification. Maryland put New Jersey on notice that its original order would no longer be enforced under Maryland law. The memorandum is not an order submitted for registration per N.J.S.A. 2A:4-30.105; it neither conforms to the requisites of an order nor complies with the requirements of registration.
Plaintiff next argues that defendant has given her written consent to transfer the determination of all issues surrounding support of the child to the state of Maryland. Defendant contends that the URESA petition initiated by Ms. Bromley serves as her written consent. Exception to the modification rules found at N.J.S.A. 2A:4-30.72a(2) permits parties to file a written consent with the state issuing an order, requesting another state to have continuing, exclusive jurisdiction. If such consent is filed by both parties, the court issuing the original order would lose continuing, exclusive jurisdiction.
Defendant's argument that the URESA petition satisfied this condition fails. No written document issued by Ms. Bromley waiving New Jersey's jurisdiction in favor of Maryland is found. Her applications submitted to Maryland URESA sought registration of New Jersey's order for enforcement purposes. A registering State (in this case Maryland) was permitted to modify aspects of the order. The 1994 Maryland order too was entered after a URESA request to increase support. New Jersey's order of January 21, 1991 had been set at $75.00 a week; Maryland, after a hearing, entered an order for $60.00 a week. There is no implied consent that Maryland law governs merely because interstate URESA transmittals were initiated.
This consent provision found in UIFSA originated in the Full Faith and Credit of Child Support Order Act [hereinafter FFCCSOA] found at 28 U.S.C.A. § 1738B enacted on October 20, 1994. The statute delineates strict requirements for the entry of written consent. See Bednarsh v. Bednarsh, 282 N.J.Super. 482, 489, 660 A.2d 575 (Ch.Div.1995) (holding that the Full Faith and Credit for Child Support Order Act's requirement for the parties' "written consent" for a state to modify a prior state's order necessitated a written submission providing a "clear showing that the parties knowingly and voluntarily desired" modification). "UIFSA expressly requires the written consent of both parties to divest a state of courts' continuing, exclusive jurisdiction. N.J.S.A. 2A:4-30.72a(2). Therefore, it would be inappropriate to find consent without a clear expression of specific intent to defer jurisdiction as contemplated by UIFSA." Peace, supra, 325 N.J.Super. at 131, 737 A.2d 1164. Absent written consent filed by both parties, New Jersey cannot be deprived of continuing, exclusive jurisdiction to modify the child support obligation.
New Jersey's order is the controlling order for modification purposes because New Jersey is the home state of the child. N.J.S.A. 2A:4-30.74(d). The initial order establishing support at Stephanie's birth was issued by New Jersey. The child at no time left the jurisdiction, her father did. The statute logically provides that New Jersey cannot be divested of its jurisdiction with regard to support of children *770 residing within the State merely because the non-residential parent left the state. By definition, Maryland cannot modify New Jersey's order so that the memorandum closing the Maryland support account is not binding upon this Court. So long as Stephanie is unemancipated, an order for her support is necessary.
Plaintiff's pleadings infer that Stephanie is emancipated because she has reached 18 years of age. Thus, entry of a support order is inappropriate. "Emancipation" is a term of art and is determined based upon the review of the facts of each case. "Attainment of age 18 establishes prima facie, but not conclusive, proof of emancipation.... Whether a child is emancipated at age 18, with correlative termination of the right to parental support, depends on the facts of each case." Newburgh v. Arrigo, 88 N.J. 529, 543, 443 A.2d 1031 (1982).
Under New Jersey law, an unemancipated child who remains a full time post secondary school student is not emancipated. Id.; Filippone v. Lee, 304 N.J.Super. 301, 700 A.2d 384 (App.Div.1997); Weitzman v. Weitzman, 228, N.J.Super. 346, 549 A.2d 888 (App.Div.1988), cert. denied, 114 N.J. 505, 555 A.2d 623 (1989). Stephanie is a full time college student needing her father's support. The parties reported their incomes to the hearing officer as $587.00 gross per week for defendant, Ms. Bromley, and $1,118.00 gross per week for plaintiff, Mr. Teare. Pending further hearing, Mr. Teare shall pay support of $125.00 per week without prejudice. The order to be entered will be effective November 1, 1999 the date of Ms. Bromley's application.
Each party shall, within fourteen (14) days of the date of this order, supply: (a) their 1999 W-2's, 1099's and 1999 income tax return, if filed; (b) the last three paystubs received for the year 2000; (c) a statement of assets and liabilities; (d) Stephanie must file a statement of all income she earned in 1999 and in the year 2000; (e) a statement of Stephanie's expenses evidencing any needs she may have to include shelter, transportation and personal expenses; (f) any documentation issued by Mr. Teare's spouse of her income if he is claiming another dependent deduction. Upon receipt of this information, the Court will compute the amount of child support to be paid by Mr. Teare; and (g) any other fact which he or she believes impacts the Court's determination of support which shall be included by way of certification. Based on Stephanie's age, it is noted that the court will not apply the New Jersey Child Support Guidelines.
A separate order will be entered by the court on the Title IV forms by the probation department.
NOTES
[1] Ms. Bromley married and is now known as Patricia Paige. In this opinion she is uniformly referred to as "Ms. Bromley", solely for continuity.