273 N.J. Super. 78 (1993)
640 A.2d 1212
MADELINE SCHWARCZ, FORMERLY KNOWN AS MADELINE ZIK, PLAINTIFF,
v.
IZHAR ZIK, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Camden County.
June 30, 1993.
*79 Martin J. Abramson for plaintiff.
Lawrence Woehrle for defendant.
*80 ORLANDO, J.S.C.
The threshold issue presented to this court for decision is whether Israeli judgments for child support, distribution of marital assets and counsel fees are enforceable in New Jersey.
Plaintiff, wife, and defendant, husband, were married in Tel Aviv, Israel in June of 1984. There was one child born of the marriage, Yaron Zik, who is age 7. The child is in the custody of his mother and resides with her in Israel. The parties separated in 1987.
In June of 1987 the Regional Rabbinical Court in Tel Aviv ordered the defendant to pay to the plaintiff for the maintenance and care of the child $400 new sheckels monthly. The court order also provided that the amount of support would be linked to any cost of living allowances paid to salaried employees and that any amount not paid on the due date would bear interest as prescribed by law. Although the defendant husband was not at the hearing, he was represented at the hearing by counsel and the court found that the defendant husband was aware of the proceeding.
Thereafter, on December 4, 1990, the Tel Aviv District Court on an appeal by the plaintiff wife ordered the defendant to pay to her the fair market value of items of personalty taken by the defendant and the value of certain other items destroyed by the defendant. In addition, the defendant husband was ordered to pay $5,000 new sheckels to the plaintiff as counsel fees. During the appeal both parties were represented by counsel.
The defendant at a time unknown to the plaintiff left Israel and commenced living in the United States. The plaintiff, having undertaken an investigation which gave her reason to believe the defendant was residing in New Jersey, instituted an action seeking enforcement of the judgment entered in Israel. Personal service was effectuated on the defendant by personally serving him with a copy of the summons, verified complaint and order to show cause in Collingswood, New Jersey.
The defendant asserts that the Israeli judgments are not enforceable in New Jersey. He contends that only those foreign *81 states which have reciprocal enforcement agreements under the Uniform Reciprocal Enforcement of Support Act N.J.S.A. 2A:4-30.24 to -30.64 (URESA) are entitled to have their judgments enforced. URESA requires the Administrative Director of the New Jersey Courts to maintain a list of those foreign States which have jurisdiction under URESA. N.J.S.A. 2A:4-30.40(a)(2). It is undisputed that Israel is not on the list of States with URESA Jurisdiction. Consequently, the defendant argues that support orders entered by Israeli courts are not enforceable in New Jersey.
The defendant misinterprets the purpose and function of URESA. The statutory purpose of URESA is to "improve and extend by Reciprocal Legislation the enforcement of duties of support". NJSA 2A:4-30.24. The Statute endeavors to provide an efficient method to enforce support orders entered in a different jurisdictions. Zelek v. Brosseau, 47 N.J. Super. 521, 136 A.2d 416 (App. Div. 1957). To achieve this goal the act provides that if the state of New Jersey is the initiating state the county welfare agency will, at the request of the court, represent the obligee in any proceeding under the Act. N.J.S. 2A:4-30.36. Similarly the act provides that when New Jersey is the responding State it shall, after receiving a copy of the complaint, docket it and thereafter the county welfare agency will prosecute the action on behalf of the obligee. N.J.S.A. 2A:4-30.41. Moreover the act delineates a procedure by which a support judgment in a foreign state may be registered. N.J.S.A. 2A:4-30.60.
Although URESA sets forth a framework by which support orders from different jurisdictions may be uniformly enforced there is nothing to suggest that it is the exclusive method by which support orders from other jurisdictions may be enforced. Indeed the Act declares that the remedies provided are in addition to, and not in substitution for, other available remedies. N.J.S.A. 2A:4-30.27.
In Zelek v. Brosseau, supra, a plaintiff obtained a Vermont judgment fixing arrears owed for support. Thereafter she initiated *82 an action in the county court in New Jersey seeking enforcement of the Vermont judgment. The county court determined that Vermont had jurisdiction over the parties, that there was no fraud in procuring the judgment and that enforcement of the Vermont judgment would not be against the governmental policy of New Jersey. Accordingly, the county court enforced the judgment.
The defendant appealed. Among the points argued by the defendant on the appeal was that the Vermont judgment should not be enforced because the plaintiff had not availed herself of the procedures outlined under URESA. The court ruled that although URESA provides an efficient method for enforcing support orders it was not the exclusive method. The plaintiff was free to follow an alternative method for enforcing her support order. The court concluded by determining that the county court had ruled appropriately by enforcing the Vermont judgment.
The fact that Israel is not on the Registry of Foreign States or Countries which have enacted URESA, is not fatal to the plaintiff's claim. It merely means that the plaintiff may not avail herself of the procedures outlined under URESA.
To determine whether or not the Israeli judgments are enforceable in New Jersey, principles of comity must be examined. In Fantony v. Fantony, 21 N.J. 525, 533, 122 A.2d 593 (1956), the New Jersey Supreme Court delineated the standard for the application of principles of comity:
Comity, in a legal sense, is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws. Hilton v. Guyot, 159 U.S. 113, [123], 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895); The Disconto Gesellschaft v. Umbreit, 208 U.S. 570 [579-81], 28 S.Ct. 337, 340, 52 L.Ed. 625 (1908). Also see 11 Am.Jur., sec. 5, p. 299.
The recognition of a judgment of a foreign court under the principle of comity is subject generally to two conditions: (1) that the foreign court had jurisdiction of the subject matter; (2) that the foreign judgment will not offend the public policy of our own State. Zanzonico v. Neeld, 17 N.J. 490, 495 [111 A.2d 772] (1955); cf. Guarantee Bank & Trust Co. v. Gillies, 8 N.J. 88, 101 [83 A.2d 889] (1951); Hachez *83 v. Hachez, supra 124 N.J. Eq. [442], at page 447 [1 A.2d 845]. The rule of comity is grounded in the policy of avoiding conflicts in jurisdiction, unless upon strong grounds, and the general principle that the court which first acquires jurisdiction of an issue has precedence, in the absence of special equities. A litigant cannot be compelled to act elsewhere, but may remain in the court which first acquires jurisdiction and abide by the terms of its decree. O'Loughlin v. O'Loughlin, 6 N.J. 170, 179 [78 A.2d 64] (1951); Stultz v. Stultz, 15 N.J. 315, 319 [104 A.2d 656] (1954). The expressions in these cases on the principles of comity are in accord with the decisions of the United States Supreme Court.
Applying the principles of comity to the case before the court, the subject of jurisdiction is first examined. There is no contention that the Israeli courts lacked jurisdiction over the subject matter or the parties. The parties were married in Israel and resided in Israel, and the defendant was represented by counsel before the Rabbinical Court as well as before the Appeals Court. Furthermore, there is no suggestion that the Israeli judgment was procured by fraud. See Mercandino v. Devoe and Raynolds Inc., 181 N.J. Super. 105, 436 A.2d 942 (App.Div. 1981).
Thus, the court turns its focus on whether or not the enforcement of the foreign judgment will offend the public policy of New Jersey. New Jersey has long had a policy of requiring parents to support children. The New Jersey Supreme Court in Daly v. Daly, 21 N.J. 599, 123 A.2d 3 (1956), gave strong expression to this policy, noting that a parent's obligation to support children has been recognized in all civilizations with few exceptions. The court went on to emphasize that this policy in New Jersey is so strong that it will not allow this State to become a haven for parents who neglect their duties of support in other jurisdictions. The obligation of a parent to contribute to the support of children is set forth in statute and procedures for the initiation of an action for child support are delineated in Court Rules N.J.S.A. 2A:34-23; N.J.S.A. 2A:34-23(A); R. 5:6-1 to -5; R. 5:6A. Thus, that portion of the Israeli judgment that requires the defendant to contribute to the support of his child does not contravene New Jersey public policy.
The Israeli judgment also requires the defendant to compensate the plaintiff for items of personalty taken or destroyed. This is akin to equitable distribution. New Jersey has a procedure *84 rooted in statute by which New Jersey courts are required to divide the assets acquired by the parties during the course of the marriage. N.J.S.A. 2A:34-23.1 Thus the award to the plaintiff of a sum of money equal to the value of the chattels taken or broken by the defendant does not run afoul of New Jersey public policy.
The Israeli judgment further provides that the defendant shall pay to the wife a sum of money for counsel fees. New Jersey also provides that a litigant may be required to pay counsel fees N.J.S.A. 2A:34-23; R. 4:42-9; Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971)
Thus no part of the orders entered in the Israeli court run afoul of New Jersey's policy. Each therefore will be enforced in this state. The plaintiff shall be permitted discovery as to the defendants assets and income. A further hearing to determine the amount of arrears and the means by which the arrears will be paid shall be scheduled.