804 A.2d 1170 (2001)
354 N.J. Super. 135
Carol LEONARDIS, Plaintiff
v.
Thomas P. WOODRUFF, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Cape May County.
September 21, 2001.
*1171 C. Peter Burro, Somers Point, for Plaintiff.
Thomas P. Woodruff, pro se.
BATTEN, J.S.C.
In this post-dissolution motion, this court is asked by defendant Thomas R. Woodruff (hereinafter "defendant") to enforcefor the fourth timeits final order of May 10, 2000, filed June 5, 2000 and affirmed by the Appellate Division on June 22, 2001,[1A] by which defendant was designated sole custodial parent of the parties' sixteen year old son, Thomas. That order (hereinafter "decision") (1) suppressed responsive pleadings filed by plaintiff Carol Leonardis (hereinafter "plaintiff") in opposition to defendant's motion for custody, (2) transferred custody and vacated defendant's child support obligation nunc pro tunc effective the November 17, 1999 filing date on defendant's motion (hereinafter "filing date"), and (3) required plaintiff to reimburse defendant for (a) all child support paid to plaintiff subsequent to that filing and (b) damages sustained as the direct and proximate result of plaintiff's bad faith and wilful violation of court rules as well as discovery and case management orders.[1] Seasoned by his three (3) prior albeit unsuccessfulenforcement experiences with plaintiff, defendant now seeks enforcement through support-specific sanctions, including (1) incarceration of plaintiff, Rule 1:10-3; (2) suspension of her driving privileges, N.J.S.A. 2A:17-56.41-49; (3) electronic intercept of all state and/or federal tax refunds, N.J.S.A. 2A:17-56.53(d), (g); (4) credit reporting, N.J.S.A. 2A:17-56.21(a); (5) asset seizure, N.J.S.A. 2A:17-56.57; and (6) new hire reporting, N.J.S.A. 2A:17-56.61. Plaintiff's dismissive response, characterizing defendant's motion as "merely a matter seeking to collect a debt, as opposed to seeking to enforce child support", plaintiff's 7/20/01 cert. para. 4, therefore requires threshold analysis of plaintiff's affirmed duty to reimburse defendant for all child support paid by him throughout the pendency of his motion.[2] Be these funds originally *1172 paid to plaintiff as child support yet be so designated, the litany of sanctions sought by defendant are properly considered andon this recordimposed. Be they, as plaintiff suggests, "merely" a matter of debt ultimately reduced to civil judgment and not in the nature of child support, the support-specific sanctions sought by defendant do not pertain and must be denied. This novel issue is, therefore, ripe for decision.

Procedural History
The record in this matter, both procedural and substantive, is tortured. Economies of time, energy, and patience of the reader therefore warrant incorporation of the court's findings of fact and conclusions of law (rendered from the bench on May 10, 2000 and recited in a fifty-four (54) page written decision) by reference. Only those facts recited by the Appellate Division in its affirmation of that decision bear restatement here:
... A previous post-divorce order, entered July 27, 1999, consented to by the parties, authorized plaintiff to remove Thomas to Florida and obligated defendant to pay $115 per week child support. The order further obligated plaintiff, on a continuing basis, to furnish defendant with the name of the school Thomas attends, copies of report cards, and the names and addresses of any employees for whom Thomas might work on a part-time or full-time basis. On November 17, 1999, defendant filed a pro se motion seeking change of custody and support, alleging plaintiff had violated these provisions of the order, Thomas had dropped out of school on November 5, 1999, and other information which would make a change of custody in the best interests of the child.
Plaintiff filed opposition. After oral argument, on January 4 and February 16, 2000, the trial judge determined that a sufficient threshold showing had been made to conduct a plenary hearing. An order was entered on April 18, 2000, scheduling the plenary hearing for May 10 and 11, 2000. The parties were ordered to file updated Case Information Statements and provide reciprocal discovery. The parties were ordered to be present at the plenary hearing. Plaintiff was required to produce Thomas for an in camera interview.
On May 10, 2000, without authorization from the court, plaintiff and Thomas did not appear. They communicated with the court by telephone from Florida, and plaintiff's attorney also participated by telephone. The judge determined that the non-appearance was wilful and inexcusable. No updated Case Information Statement had been filed by plaintiff and plaintiff had not responded to defendant's discovery requests. Thomas was not available for an in camera interview. Defendant was prepared to proceed; yet plaintiff was prepared to present no evidence in opposition to defendant's motion.
The judge imposed the ultimate sanction of striking plaintiff's opposing pleadings and declaring defendant's motion unopposed. See Abtrax Pharm., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 655 A.2d 1368 (1995). Based upon the proofs available, he made findings and ordered that custody be changed from plaintiff to defendant. Because he found that plaintiff had no meritorious opposition to defendant's motion and had abused the judicial process by delaying the disposition of his motion for six months, he ordered that the custody *1173 change be nunc pro tunc effective November 17, 1999, when the motion was filed. Because he found that Thomas had been out of school and working full-time and paying rent to plaintiff, information which plaintiff withheld from defendant and the court, while improperly delaying the court proceeding on defendant's motion, while defendant was conscientiously paying his child support obligations, he ordered plaintiff to reimburse defendant for child support payments made subsequent to November 17, 1999. N.J.S.A. 2A:17-56.23a; Keegan v. Keegan, 326 N.J.Super. 289, 293, 741 A.2d 134 (App.Div.1999).
The appellate court likewise incorporated this court's oral and written decisions by reference, offering no further comment in its affirmation.
Now, fifteen (15) months subsequent to the decision and three (3) months subsequent to appellate review, plaintiff has paid virtually nothing on account of her obligation for reimbursement of child support and payment of compensatory damages earlier awarded. In response to the instant motion, plaintiff essentially asserts a non-specific and uncorroborated inability to pay yet continues her adamant refusal to provide this court with a Case Information Statement or other financial disclosure. Such non-disclosure and continuing non-compliance therefore remain unexplained. Plaintiff seeks no opportunityand reveals no inclinationto cure either. Her conduct, stated otherwise, is nothing new. And she now raises, in her certification, the thinly-veiled specter of bankruptcy as threshold defensive counter-weapon against any civil judgment entered against her. If so successful, this pro se defendant would be left, presumably, to seethe in his frustration over plaintiff's succession of procedural ploys invoked with clear purpose to frustrate judicial process, initially, and restitution to defendant ultimately.
The nature and status of the monies past due and owing to defendant are most fundamental issues for yet another reason. If "child support", these funds are potentially exempt from the automatic stay triggered by plaintiff's filing of a petition in federal bankruptcy court. 11 U.S.C. 362(b)(2).[3] If no longer "child support" but, instead, "mere debt" secured only by civil judgment, as plaintiff suggests, defendant loses the factual predicate to (1) support-specific statutory sanctions and (2) exemption from the automatic stay, if not complete discharge of a civil judgment upon plaintiff's successful petition to the bankruptcy court. 11 U.S.C.A. § 362(a) (1, 2).[4]
*1174 Conduct is relevant. Plaintiff has violatedand remains in violation ofan order of this court for, now, the fifth (5th) time.[5] She has failedand yet refusesto reimburse defendant for all or any portion of that child support which he paid to her, in timely manner, throughout the pre-trial pendency of his custody motion. Her documented refusal to (1) provide any properly requested discovery, (2) file a Case Information Statement, (3) appear at trial, and (4) produce the parties' son for in camera interview all constitutedand were adjudicatedviolations of such number, magnitude and deliberation that this court properly invoked the ultimate sanction: suppression of her responsive pleading, entry of default nunc pro tunc on the motion, and return of custody to defendant with corresponding vacation of his child support obligation. Appellate affirmation of this relief leaves no doubt about plaintiff's obligation to such extent.
The child support received by plaintiff directly consequent to her contumacious conduct loses neither intrinsic nature nor status as support upon her adjudicated loss of entitlement thereto merely because the support payments were or may have been negotiated and commingled with other funds and thereafter spent. On the contrary, such an argument lacks any basis in law or equity.

Law
Certainly, the constitutional[6], statutory[7] and decisional[8] components of our *1175 child support scheme in this state facilitated plaintiff's initial entitlement to and receipt of child support payments, even beyond the point in time that defendant consented to removal of the parties' son to live with plaintiff in Florida. N.J.S.A. 9:2-2; Holder v. Polanski, 111 N.J. 344, 544 A.2d 852 (1988); Baures v. Lewis, 167 N.J. 91, 770 A.2d 214 (2001). She enjoyed the efficiency, predictability, safety and neutrality of contemporary interstate child support adjudication, modification, enforcement and collection corollary to the dissolution of her marriage to defendant. Specifically, New Jersey's status as state of original continuing jurisdiction afforded plaintiff the convenience of enforcement of her child support order, entered in Cape May County, through the Probation Department of the county of defendant's employment and residence, Atlantic County, even subsequent to her relocation to the State of Florida. N.J.S.A. 2A:4-30.65; 2A:34-28. She likewise enjoyed (1) mandatory "cost of living" or "COLA" adjustment every two (2) years, N.J.S.A. 2A:17-56.9(a); (2) triennial review for that period prior to implementation of the COLA program, N.J.S.A. 2A:17-56.9(a), Doring v. Doring, 285 N.J.Super. 369, 666 A.2d 1388 (Ch.Div.1995); and (3) the discretionary "changed circumstances" doctrine available to all child support payees in appropriate instances. Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980). Indeed, any earlier threat of bankruptcy imaginably levied by defendant against plaintiff during her entitlement to support would have rung hollow given the likely exemption of "support" payments from the automatic stay provisions of the Bankruptcy Code. See 11 U.S.C. § 362(b).
Child support thus flowing "in" to the plaintiff, during that period of time for which she has since been adjudicated unentitled, does not lose its nature or status as "support" when re-paid "out" to the defendant. This child support was paid timely by defendant during the pendency of his custody motion. Only plaintiff's opposition thereto, ultimately abandoned, yielded a six (6) month delay in decision thereon. Without question, her conduct as found at trial and affirmed on appeal directly and proximately yielded defendant's payment of child support to plaintiff in duration and aggregate amount beyond what the law then required. Having both paid and persevered, defendant now fairly remains entitled to neither fewer nor different rights and protections in his pursuit of reimbursement for child support captured by plaintiff under false pretenses as were afforded plaintiff throughout her transgressions and loss of custody. Stated otherwise, child support thus paid "in", under these facts, remains child support until fully paid "out".

Equity
Characterization of defendant's reimbursement as "merely... debt", not child support, equally defies the most basic notions of fairness, and for several reasons. First, plaintiff's "hands", in the language of the equitable maxim, are anything but "clean", given the record of her conduct in this matter. Johnson v. Johnson, 212 N.J.Super. 368, 515 A.2d 255 (Ch.Div.1986); Sheridan v. Sheridan, 247 N.J.Super. 552, 589 A.2d 1067 (Ch.Div.1990); Pellitteri v. Pellitteri, 266 N.J.Super. 56, 628 A.2d 784 (App.Div.1993). Second, she availed herself of the procedures and protections of our child support enforcement community for years yet, when ordered by both trial and appellate courts to return the support unlawfully procured, dangles the prospect of bankruptcy above *1176 defendant's head as though it were a Damoclesian sword. Her position smacks of hypocracy. Indeed, plaintiff should be credibly heard to advance the character and nature of these funds as something other than child support only upon her acknowledgment of their expenditure on items unrelated to the support of the parties' son.[9] Third, plaintiff's indebtedness to defendant represents not child support which plaintiff might or could have been ordered to pay had she not contested defendant's custody motion; it is, instead, indebtedness which corresponds exactly to the amount of child support actually paid by defendant to plaintiff for that period, filing date to decision, for which plaintiff was unentitled. [Emphasis added.] That distinction is significant.[10]
Reasons both legal and equitable therefore dictate that child support received through malfeasance of an obligee, such as this plaintiff, does not lose either its nature or status as support when later ordered by the court to be reimbursed to the wronged obligor, such as this defendant. The statutory sanctions herein sought by the latter against the former are therefore applicable and are reasonably granted. This court therefore ordersbeyond reimbursement of $2,850. in child support to defendant by October 11, 2001that:
(a) plaintiff's license and/or privilege to operate an automobile in the State of New Jersey shall be revoked, by operation of law, should plaintiff fail to reimburse defendant, in full, on or before October 11, 2001, the twentieth (20th) day subsequent to this court's initial decision on this motion. Such revocation shall become effective on the thirtieth (30th) day subsequent to the last day for payment (October 11, 2001), November 9, 2001, per N.J.S.A. 2A:47-56.41(a) unless plaintiff "pays the full amount of the child support arrearage". The child support warrant authorized by Paragraph One of this court's initial decision of September 21, 2001 shall, once issued, satisfy the statutory warrant requirement. Payment in full by plaintiff at any time subsequent to the issuance of child support warrant and/or revocation of driver's license/driving privileges shall satisfy this child support obligation and shall cause vacation of the warrant, reinstatement of driving privileges, and release from incarceration. Nothing herein shall operate to deny plaintiff any due process or other statutory entitlement provided per N.J.S.A. 2A:17-56.44;
(b) defendant is hereby authorized, per N.J.S.A. 2A:17-56.57, to seek and obtain from any "financial institution doing business in this State" any and all financial information pertaining to plaintiff and any assets held in plaintiff's name. This decision and order memorializing same shall constitute authority for said institutions to encumber such assets, to the extent of $2,850 unreimbursed child support, $45.13 uninsured medical expenses and $15 unreimbursed filing fees. Defendant's authority in this regard shall likewise not be effective *1177 absent plaintiff's timely payment of all outstanding obligations to defendant by not later than October 11, 2001;
(c) effective immediately, defendant is hereby authorized to provide to any "credit reporting agency", through the New Jersey Department of Human Services, the name of plaintiff, her last-known address, and total amount due to defendant pursuant to this and prior orders of this court, per N.J.S.A. 2A:17-56.21(a) through (e);
(d) effective immediately, defendant is hereby authorized to request and obtain from all "employers and labor organizations doing business in this State" any and all information relating to the "hire" or "re-hire" of plaintiff and such other information as authorized by N.J.S.A. 2A:17-56.61 and maintained by NJDHS;
(e) effective immediately, defendant shall be and hereby is adjudicated to be entitled to that information about plaintiff as specified by N.J.S.A. 2A:17-56.53(d) as well as interception and seizure of periodic or lump sum payments from state/local agencies, including "unemployment compensation, worker's compensation ... judgments, settlements and awards, inheritances; and lotteries" as well as state and/or federal tax refund intercepts, per N.J.S.A. 2A:17-56.53(g) and 2A:17-56.16;
(f) effective May 10, 2000 date of decision, all child support therein adjudicated due and owing from plaintiff to defendant shall bear interest, per N.J.S.A. 2A:17-56.20(b), at five (5%) percent, as presently determined by the State IV-D agency. Other sums adjudicated due and owing shall bear interest at the current post-judgment interest rate of 7% per Rule 4:42-11(a). September 21, 2001 Order.
[The portion of the opinion referring to the jurisdiction of the United States Bankruptcy Court is not included herein as it does not meet the guidelines for publication. R. 1:36-2(d)]
The nature and status of the funds which this court ordered be reimbursed by plaintiff consequent to her documented conduct remains "child support" no less than the monies paid by defendant to plaintiff during the pendency of defendant's motion. Any different analysis would create a gaping void in our statutory scheme for the reasons above expressed. This court cannot imagine that our legislature, through its enactment of N.J.S.A. 2A:34-23 and related legislation,[11] intended that court-ordered reimbursement of child support wrongfully yet knowingly received by a parent unentitled thereto should or does lose its status as "support" through the restitutional process of reimbursement to the innocent parent.
Child support "in" thus remains child support "out".
NOTES
[1A] Leonardis v. Woodruff, A-297-00T3, decided 6/22/01 (unpublished opinion)
[1] The effective date on both change of legal custody and vacation of duty to pay child support predate the court's actual decision by nearly six (6) months. Defendant's first enforcement motion, seeking enforcement of plaintiff's duty to return the parties' son from Florida, was filed and granted just months following the May 10, 2000 decision. Physical custody of the son was not returned to defendant until September 2000, approximately four (4) months subsequent to the court's decision and nearly one (1) year subsequent to the filing date. This court's research reveals no reported decision affording a non-custodial parent such retroactive relief on these or any other facts. Affirmation by our Appellate Division, as above-noted, reconfirms this court's inherent authority to do that which the most basic notions of fairness dictate, all as more specifically explained in this court's fifty-four (54) page written opinion cited approvingly in the appellate decision.
[2] The period commencing November 17, 1999 and extending through May 10, 2000 comprises 175 days, or 25 weeks, which, at $115 per week in support actually paid by defendant to plaintiff, entitles defendant to reimbursement of $2,875.
[3] In pertinent part, 11 U.S.C. 362(b) states:

(b) The filing of a petition under section 301, 202, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay
(2) under subsection (a) of this section
(A) of the commencement or continuation of an action or proceeding for ...
(ii) the establishment or modification of an order for ... support; or ...
(B) of the collection of ... support from property that is not property of the estate; ... [Emphasis added.]
[4] In pertinent part, 11 U.S.C.A. § 362(a)(1) and (2) state:

(a) ... a petition ... operates as a stay, applicable to all entities, of
(1) the commencement or continuation... of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title. [Emphasis added.]
[5] Plaintiff has heretofore been adjudicated to have violatedon separate and distinct occasionsthis court's orders dated (a) May 10, 2000; (b) July 31, 2000; © September 15, 2000; and (d) March 14, 2001.
[6] Article 1, paragraph 1 of the New Jersey Constitution states:

All persons are by nature free and independent and have certain natural and unalienable rights among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.
As relates to the adjudication and enforcement of child support, see Anthony v. Anthony, 9 N.J.Super. 411, 74 A.2d 919 (Ch.Div.1950) (compulsory blood test, upon husband's denial of paternity, does not infringe on his right to privacy); Sullivan v. Stroop, 496 U.S. 478, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (AFDC eligibility for a child's insurance benefits constitutes a form of child support).
[7] See (a) N.J.S.A. 2A:34-23 (factors to be considered in determination of support amount); (b) N.J.S.A. 9:17-38 (New Jersey Parentage Act); (c) N.J.S.A. 9:17-41 (basis for child support action; proof of parent-child relationship; establishment of support order); (d) N.J.S.A. 2A:17-56.7(a) et seq. (New Jersey Child Support Program Improvement Act); (e) N.J.S.A. 2A:17-56.27 (Child Support Collection Reform Act); (f) N.J.S.A. 2A:4-30.65 et seq (enforcement of interstate support actions); (g) N.J.S.A. 2A:34-28 (Uniform Reciprocal Enforcement of Support Act, Revised); (h) N.J.S.A. 2C:24-5 (willful non-support); (I) N.J.S.A. 2C:25-29 (child support available to victim of domestic violence).
[8] See (a) Youssefi v. Youssefi, 328 N.J.Super. 12, 744 A.2d 662 (App.Div.2000) (asserting in personam jurisdiction in New Jersey under UIFSA over husband who had moved to France, where wife had moved to Utah); (b) Peace v. Peace, 325 N.J.Super. 122, 737 A.2d 1164 (Ch.Div.1999) (New Jersey order controls, under UIFSA, where both New Jersey and Nevada enjoyed continuing exclusive jurisdiction); (c) Schwarcz v. Zik, 273 N.J.Super. 78, 640 A.2d 1212 (Ch.Div.1993) (Israeli child support judgment was enforceable in New Jersey even though Israel was not a state signatory to UIFSA); and, more generally, (d) Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980) (the doctrine of changed circumstances and effect of such prima facie showing upon financial disclosure).
[9] Any such acknowledgment, of course, given these facts, might very well entitle defendant to exemption from the automatic stay for altogether different reason. In pertinent part, 11 U.S.C.A. § 362(b)(1) states:

(b) the filing of a petition ... does not operate as a stay
(1) ... of the commencement or continuation of a criminal action or proceeding against the debtor;
[10] This court stops shy of adjudicating plaintiff's affirmative duty to pay child support to defendant for the filing-to-decision period under these circumstances.
[11] See Footnote 7, supra.