**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4873-15T1
　　　　　　　　 A-2066-16T1

H.B.,

　　　　Plaintiff-Respondent,

v.

P.S.,

　　　　Defendant-Appellant.

_____

　　　　　　　Argued telephonically November 5, 2018 –
　　　　　　　Decided January 9, 2019

　　　　　　　Before Judges Yannotti, Gilson and Natali.

　　　　　　　On appeal from Superior Court of New Jersey,
　　　　　　　Chancery Division, Family Part, Bergen County,
　　　　　　　Docket No. FM-02-2624-11.

　　　　　　　P.S., appellant, argued the cause pro se.

　　　　　　　Respondent has not filed a brief.

PER CURIAM

Defendant P.S.[1] appeals from two post-judgment Family Part orders dated June 13, 2016, and January 20, 2017. The June 13, 2016 order modified defendant's child support obligations retroactive to April 29, 2016, but denied modification of his alimony payments. The January 20, 2017 order denied defendant's applications: 1) for dissolution of a restraining order; 2) to be appointed guardian ad litem for his adult children; and 3) to compel specific performance of the parties' second amended judgment of divorce (JOD).

We issue a single opinion disposing of these two appeals. We affirm the January 20, 2017 order because we conclude the trial court did not abuse its discretion in denying defendant's applications giving rise to that order. However, we reverse the June 13, 2016 order to the extent it denied modification of defendant's alimony payments because the trial court failed to make the necessary factual findings for a proper adjudication of defendant's motion. Similarly, because our careful review of the record does not reveal a rational basis for the court's choice of April 29, 2016, as the retroactive date for defendant's modified child support payments, we remand for the court to make a specific finding as to that issue.

---

[1] We use initials to protect the confidentiality of the participants in these proceedings.

A-4873-15T1

I.

The parties were married in June 1991 and have two unemancipated adult children. Plaintiff H.B. filed for divorce in May 2011. On or about February 20, 2013, she applied for an order requiring defendant to show cause as to why he should not be restrained from contacting plaintiff, her counsel, and the parties' children. A motion judge granted plaintiff's application on February 21, 2013, and entered an amended order that same day imposing interlocutory restraints against defendant pursuant to Rule 4:52-2. The amended order was accompanied, and further amended, by a rider that awarded plaintiff temporary custody of the children and prohibited defendant from having any contact with plaintiff, her counsel, and the children until further court order.

On March 26, 2013, the judge entered a dual Final Judgment of Divorce (JOD) that dissolved the marriage and ordered the parties to submit an amended JOD to include the terms of their settlement agreement. The court entered an amended JOD on May 13, 2013, which incorporated the earlier restraints, obligated defendant to pay $378 per week in child support, and awarded plaintiff permanent alimony of $50,000 per year based on her imputed annual income of $40,000 and defendant's annual salary of $190,000. A

3

second amended JOD was entered on September 4, 2013, which corrected and clarified the payment schedules for alimony and child support and, except for certain provisions not relevant to this appeal, incorporated the earlier JODs, including the restraints and support awards.

As amended, the JOD directs plaintiff to "cooperate in respect of executing an[y] paperwork necessary to effectuate" a provision in the JOD that requires defendant to maintain at least $600,000 in life insurance. With respect to alimony, the JOD permits "modification of alimony based on changed circumstances in accordance with the guidelines set forth in [Lepis v. Lepis, 83 N.J. 139 (1980)] and its progeny." However, a separate provision in the JOD, contained in a paragraph addressing the disposition of the parties' former marital home, states that "there will [be] no reduction in alimony while [p]laintiff is living at the former marital home."

The JOD further provided defendant with a fourteen-day window to hire an off-duty police officer to accompany him to the former marital home to conduct an inventory of the parties' personal property. Within seven days after that walk-through, defendant was required to provide to plaintiff's counsel a list of the personalty he wished to keep. Plaintiff had seven days thereafter to respond and object, and any items in controversy were to be "formulated into

4

one list" and a coin toss would determine which party "gets to pick the first item off the list," with alternating selections between the parties thereafter. The record does not reflect if defendant timely completed the list.

On July 28, 2015, defendant filed an application for modification of his permanent alimony and child support obligations under the JOD. At that time, the parties' children were earning undergraduate degrees, the elder daughter at McGill University in Canada and the younger son at Dartmouth College in New Hampshire, funded by their late paternal grandparents' educational trust. Defendant's certification in support of his application states the former marital residence was still in the foreclosure process at that time.

In a September 28, 2015 order and accompanying statement of reasons, a second motion judge denied defendant's application without prejudice based on the court's finding that defendant failed to show changed circumstances warranted modification of either child support or alimony. Specifically, the judge found defendant failed to satisfy "his threshold burden of showing that he has made a meaningful effort to find" employment.

On October 16, 2015, defendant filed a motion for reconsideration of the September 28, 2015 order. In a January 8, 2016 order, the court: 1) granted defendant's motion for reconsideration; 2) "reserve[d] the right" to modify

defendant's support obligations retroactive to July 28, 2015; 3) scheduled a plenary hearing for April 14, 2016; and 4) required plaintiff to file an updated Case Information Statement (CIS).

Following the April 14, 2016 plenary hearing, the court issued two companion orders dated April 29, 2016, which made certain discovery rulings and scheduled ensuing plenary hearings that were conducted on May 31, 2016, June 2, 2016, and June 7, 2016.

Defendant's expert witness, Dr. David B. Stein, testified at the May 31, 2016 hearing on the issue of defendant's employability. Dr. Stein's testimony indicated defendant's adjusted gross income in 2011, 2012, and 2013 averaged approximately $98,100 per year. In addition, Dr. Stein stated that defendant was capable of earning up to $120,000 in 2016. Defendant testified that his base salary of $50,000 per year with five percent commission on sales could produce up to $90,000 in earnings in 2016.

At the June 2, 2016 hearing, plaintiff testified that her income in 2015 was $62,500, excluding alimony, but the company she worked for closed toward the end of that year, so she obtained a new job earning $25 per hour that she expected would yield approximately $50,000 in income for 2016. She

6

also testified that the parties' lifestyle around the time of the JOD was equivalent to someone who was earning approximately $190,000.

In a June 13, 2016 order and accompanying written opinion, the court granted defendant's application to modify child support and reduced the payments to $45 per week per child, retroactive to April 29, 2016. However, the court denied modification of alimony based on defendant's failure to show changed circumstances warranted relief as defendant's "present income and his average income from the time of divorce were similar." The court also determined plaintiff's continued residence at the former marital residence at all relevant times of this litigation compelled denial of any alimony modification under the terms of the JOD.

On or about December 9, 2016, defendant filed applications seeking to: 1) vacate the restraining order; 2) have himself appointed as guardian ad litem for his children; 3) recover personal property from the former marital residence; and 4) compel plaintiff to execute certain insurance documents.

The court heard oral arguments on these motions on January 20, 2017. At the conclusion of the hearing, the judge issued an oral opinion and a written order denying all of defendant's applications. These appeals followed.

A-4873-15T1

## II.

Family Part rulings on applications to modify child support and alimony are entitled to our deference on appeal absent a clear abuse of discretion. Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012); J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Jacoby, 427 N.J. Super. at 116 (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). However, as settlement agreements are contractual in nature, Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div. 1995), we review de novo the trial court's interpretation of the parties' agreement that was incorporated into their JOD. See Quinn v. Quinn, 225 N.J. 34, 45 (2016) ("An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute."); Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998) (explaining contract interpretation "is a matter of law for the court subject to de novo review").

## A.

Defendant argues the trial court erred in including the children's undergraduate expenses in its modified child support award. We disagree.

The Child Support Guidelines generally "are not applicable when determining the parental obligation for child support of unemancipated college students." Raynor v. Raynor, 319 N.J. Super. 591, 614 (App. Div. 1999). In determining child support for college students, the court must consider the factors provided in N.J.S.A. 2A:34-23(a). Jacoby, 427 N.J. Super. at 121-22.

Here, the court correctly determined it was "not appropriate to utilize the Child Support Guidelines" because "neither child is commuting from home to college." See Raynor, 319 N.J. Super. at 614. In considering the first statutory factor under N.J.S.A. 2A:34-23(a), the court concluded:

> The needs of the children are limited. Both children attend college and their room and board while away at school are covered by distributions from a [t]rust set up by their grandmother for the benefit of her grandchildren. Expenses associated with transportation to and from college during school breaks; nominal expenses associated with some schedule A expenses . . . ; some expenses with regard to Schedule B when the children come home and an increase in certain Schedule C expenses associated with food, etc. For the most part the children's expenses are covered by gifts from their grandmother ($14,000 each for 2015)[,] their [t]rust fund and their own earnings from part time jobs. The CIS submitted by the plaintiff contains numerous misrepresentations and is unreliable with regard to "need."
>
> The [c]ourt has considered the following: Local residence; auto costs; travel expenses to/from college; clothing; lines [sic] and bedding; haircuts, telephone,

sundries, toiletries and entertainment as part of college costs.

With respect to the second factor, the court noted defendant's income "hovers around $90,000 but potentially could reach $120,000 or more. The plaintiff earns approximately [$50,000 to $52,000] per year. The lifestyle at the time of the divorce was not addressed by the parties." As to the third and fourth factors, the court determined that it "cannot conclude that either party has any undisclosed income or assets," and that "plaintiff is earning well above the income imputed (or contemplated) as of the time of the divorce." The court concluded factor five was "[n]ot applicable as all college costs are covered by others." With respect to factors six and seven, the court noted the parties did not raise any health issues; the children were twenty-one and nineteen years old; the parents were sixty and fifty-eight years old; and "plaintiff was not sure of the amount of [the children's] earning[s] but thinks they earn less than $2,000.00 each." The court determined factor eight was not applicable, and as to factor nine, the court noted the children did not have any debts or liabilities and any debts and liabilities of the parents were "not addressed with specificity."

Regarding the final factor, the court found both parties were,

> veracity challenged. [Defendant] with his resume augmentation and a litany of excuses and [plaintiff] with her unverifiable assertions which are not borne out when challenged. [Plaintiff] continues to live in the marital home but does not contribute any money towards mortgage or expenses. She asserts that she pays for landscaping and had to fix a broken pipe!

Thereafter, the court noted "[i]t is not un-noticed that the children have no relationship with their father, the cause of same is a subject in dispute." The court again concluded that "all college related expenses are paid for without contribution by either party" before reducing defendant's child support obligations from $378 per week to $90 per week (covering both children).

The trial court properly analyzed the N.J.S.A. 2A:34-23(a) factors when establishing defendant's modified child support obligation. Because defendant does not direct our attention to any particular college cost that the trial court improperly included and failed to consider in its modified child support award, we find his first claim lacks merit.

Defendant also argues that the court erred in establishing April 29, 2016, as the retroactive date of modification for child support. The trial court may modify child support retroactively, but the effective date cannot precede the date upon which the movant mailed to the other party notice of a motion for modification. N.J.S.A. 2A:17-56.23a. If the motion is not filed within forty-

five days after mailing the notice, "modification shall be permitted only from the date the motion is filed with the court." Ibid.

Here, it is unclear from the record whether, and if so when, defendant mailed notice of his motion to plaintiff. Thus, the earliest retroactive date the trial court could have selected is "the date the motion [was] filed with the court," ibid., which was July 28, 2015.

Although April 29, 2016, is statutorily compliant as it does not precede the filing date of defendant's motion, the only apparent significance of April 29, 2016, is on that date, the court issued companion orders scheduling then-ensuing discovery and plenary hearings. Neither the June 13, 2016 order nor accompanying opinion explains why the court modified defendant's child support retroactive to April 29, 2016, as opposed to any other date, e.g., July 28, 2015 (the date defendant filed his original motion for modification and the date to which the court "reserve[d] the right" to make retroactive modification) or October 16, 2015 (the date defendant filed his application for reconsideration of the court's denial of modification and the retroactive date requested by defendant).

Although the trial court was not required to set the retroactive date as the motion's mailing or filing date, courts typically establish the retroactive date at

12

or about the filing date. See, e.g., Ibrahim v. Aziz, 402 N.J. Super. 205, 214 (App. Div. 2008) ("As the trial court indicated . . . , the adjustment in the child support payments will be retroactive to May 4, 2005, the date defendant filed his motion for reconsideration of his support obligations."); Diehl v. Diehl, 389 N.J. Super. 443, 452 (App. Div. 2006) (deeming "proper in all respects" the trial court's decision to fix "the retroactivity of the modification to the date of plaintiff's first motion for modification"); Walles v. Walles, 295 N.J. Super. 498, 514 (App. Div. 1996) (reversing retroactive modification that preceded the earliest permissible date and remanding "to reflect a retroactive commencement date of" the day after the motion was filed); see also Leonardis v. Woodruff, 354 N.J. Super. 135, 136, 138 (Ch. Div. 2001) (explaining a court order in that case "required plaintiff to reimburse defendant . . . for child support payments made" after the filing date of defendant's motion).

As noted, the court did not provide any explanation for establishing April 29, 2016, as the retroactive date. Therefore, we reverse the June 13, 2016 order on the issue of the retroactive date for child support and remand for the motion judge to make a specific finding explaining why April 29, 2016, or a different date that it may choose within its discretion, is appropriate.

13

## B.

Next, defendant maintains the motion judge erred in denying his application to modify his alimony obligations under the JOD as changed financial circumstances warranted modification. We agree.

"Where the parties have agreed on the amount of support or alimony," modification of the agreement is appropriate "to the extent that changed circumstances render the agreed terms no longer 'fair and equitable.'" Morris v. Morris, 263 N.J. Super. 237, 241 (App. Div. 1993) (quoting Lepis v. Lepis, 83 N.J. 139, 148–149 (1980)). "[T]he moving party has the burden of establishing the circumstances that warrant the change" in alimony. Zazzo v. Zazzo, 245 N.J. Super. 124, 132 (App. Div. 1990).

In deciding a motion for modification, in addition to the factors provided in Lepis, such as whether the supporting spouse is able to meet the original alimony obligations, Lepis, 83 N.J. at 151-52, the court must consider the statutory factors set forth in N.J.S.A. 2A:34-23(k) to (l), as applicable. Those factors include: the reasons for any reduction in income; the parties' financial circumstances; and whether any change in circumstances was voluntary, involuntary, temporary, or permanent. See N.J.S.A. 2A:34-23(k) to (l).

"In an application brought by a supporting spouse for a downward modification in alimony . . . , the central issue is the supporting spouse's ability to pay." Miller v. Miller, 160 N.J. 408, 420 (1999). Thus, if the payor is incapable of complying with the terms of the JOD or supporting the payee at the marital standard of living, modification may be appropriate. Conversely, modification may also be appropriate when "there has been a significant change for the better in the circumstances of the dependent spouse . . . ." Stamberg v. Stamberg, 302 N.J. Super. 35, 42 (App. Div. 1997). In that situation, because the payee can better support himself or herself, the need for the payor to continue providing the original level of support diminishes. Additionally, the movant can demonstrate "changed circumstances under Lepis by citing a combination of changes on the part of both parties which together have altered the status quo which existed at the time of the entry of the support order under review." Ibid.

Another circumstance is whether the parties agreed that the payor would pay "a fixed amount [of alimony], regardless of changes in circumstances." Morris, 263 N.J. Super. at 242. Provisions that attempt to insulate alimony agreements from modification or that reject the Lepis standards altogether, known as "anti-Lepis" provisions, see id. at 240-41, 245, are enforceable

15

"irrespective of the need-based guidelines of Lepis" when their enforcement is "not unwarranted under the circumstances . . . ." Id. at 245–46. Whether a clause is an anti-Lepis provision depends on the parties' common intent. See Quinn, 225 N.J. at 45 ("A settlement agreement is governed by basic contract principles.").

Although in uncontested divorces where the parties agree to a fixed amount of alimony, the judge issuing the JOD need not make specific findings as to the marital standard of living, Weishaus v. Weishaus, 180 N.J. 131, 144 (2004), it becomes incumbent upon the motion judge deciding a motion for modification to make those findings. Glass v. Glass, 366 N.J. Super. 357, 371 (App. Div. 2004) ("where the marital standard has not been established, a judge addressing a modification application must make such determination"); see Crews v. Crews, 164 N.J. 11, 16 (2000) ("The importance of establishing the standard of living experienced during the marriage cannot be overstated. It serves as the touchstone for the initial alimony award and for adjudicating later motions for modification of the alimony award when 'changed circumstances' are asserted.").

Here, the JOD was uncontested and, as amended, incorporated the parties' settlement agreement, which awarded plaintiff $50,000 per year in

16

permanent alimony based on plaintiff's imputed income of $40,000 and defendant's salary of $190,000. Defendant maintains, and the motion judge found, that since the time of the JOD, defendant's former businesses ceased operations. Further, his new job paid a base salary of $50,000, with a five percent commission on sales, which defendant testified could yield a total salary of approximately $90,000.

Despite these facts, the motion judge determined defendant failed to satisfy his burden of showing a substantial change in circumstances. The court found the $190,000 salary figure from the JOD "had no basis in reality compared to [defendant's] actual tax returns," based on Dr. Stein's testimony regarding defendant's 2011, 2012, and 2013 returns, which indicated defendant's average adjusted gross income (AGI) for those years was approximately $98,100.[2] The court found defendant's potential earnings of $90,000 to be similar such that modification was inappropriate.

---

[2] The judge's factual findings as to defendant's income are not based on substantial evidence in the record. The opinion accompanying the court's June 13, 2016 order states that "Dr. Stein reviewed the income tax returns for the years 2011, 2012 and 2013 . . . and found that the annual reported income . . . averaged approximately $93,000.00 - $94,000.00 during that time period." However, Dr. Stein actually testified that defendant's annual AGI, as opposed to income, as reported in his tax returns was $133,812 in 2011, $94,367 in 2012, and $66,130 in 2013, which averages approximately $98,100.

17

Under these circumstances, we conclude the reduction in defendant's stipulated income of $190,000 to his approximated $90,000 income constitutes a substantial change in circumstances and the trial court abused its discretion in disregarding the JOD's $190,000 salary figure.

First, the JOD clearly shows the parties agreed that defendant's salary was $190,000, at least for purposes of calculating support. Not only did this dollar figure have a "basis in reality," but it has a basis in the record. At the June 2, 2016 plenary hearing, the court inquired of plaintiff, "[w]ould you agree that . . . your lifestyle was equivalent to somebody who was earning $190,000?" Plaintiff testified, "[a]t the time[,] our lifestyle? Yes." Thereafter, the judge said, "I'm just trying to understand how we go from $90,000 and change in income," seemingly referring to Dr. Stein's testimony, "up to $190,000 as represented here." Plaintiff responded, "[i]s that gross income, sir, or adjusted gross income? I don't know what [defendant] took off in terms of expenses and other things on the taxes." The judge then asked, "[s]o are you telling me that there's approximately $100,000 in expenses that [defendant] ran through his business that were actually personal expenses," to which plaintiff responded, "I don't know."

 A-4873-15T1

Paragraph nine of the second amended JOD answers the question of whether the $190,000 salary figure represented gross income or AGI: "The child support calculation is based upon imputed income of $40,000.00 to [p]laintiff and the gross income of [d]efendant of $190,000.00." Thus, the motion judge's decision to disregard the JOD's $190,000 gross income figure because it differed from defendant's AGI was erroneous.

Similarly, in finding defendant's "present income and his average income from the time of divorce were similar," the judge equated defendant's average annual AGI for 2011 through 2013 with defendant's anticipated gross income of $90,000 in 2016. That fact finding was not supported by the record because, assuming defendant paid his $50,000 alimony obligation, his AGI for 2016 would have decreased to $40,000 based solely on that deduction.

Because the divorce was uncontested and the parties agreed to a fixed amount of alimony, the judge issuing the JOD was not required to make a specific finding as to the marital lifestyle, Weishaus, 180 N.J. at 144, and the JOD does not contain any such findings. However, upon a change in circumstances, which existed here, it became incumbent upon the motion judge deciding defendant's motion for modification to make those findings. See Glass, 366 N.J. Super. at 371. While the June 13, 2016 opinion specifically

19

notes that "[t]he lifestyle at the time of the divorce was not addressed by the parties," and despite plaintiff's testimony at the June 2, 2016 plenary hearing, the opinion does not make any marital lifestyle findings, the "touchstone" necessary for a proper adjudication. See Crews, 164 N.J. at 16. These findings are critical here because, based on defendant's $90,000 anticipated income in 2016, he would be paying approximately 56% of his income toward alimony alone. As we have stated, alimony awards must be "fair and equitable" to receive continued enforcement. See Morris, 263 N.J. Super. at 241 (quoting Lepis, 83 N.J. at 148–149). On remand, the court should make marital lifestyle findings in deciding the motion.

In addition, to the extent the court barred modification based on the JOD provision that prohibits reduction in alimony while plaintiff resides at the former marital home, the court failed to make specific findings of the parties' intent in incorporating that provision into the JOD. The provision at issue is located in the penultimate paragraph of the JOD. That paragraph addresses the disposition of the former marital home and contains language expressing the parties' "belie[f]" that the home, at the time of the JOD, was "in the foreclosure process." Five years have passed and the court found plaintiff still resides in the former marital home. In our view, the court would need to make a specific

finding, based on competent evidence, that the parties intended for the provision to be an anti-Lepis provision or to apply in perpetuity for that provision to overcome the clause in paragraph three, which permits either party to "file an application for modification of alimony based on changed circumstances in accordance with the guidelines set forth in [Lepis] and its progeny."

In sum, we reverse the June 13, 2016 order to the extent it denied modification of alimony.  We remand on that issue for the court to make specific findings as to the parties' marital standard of living and the parties' intent in incorporating the provision prohibiting reduction in alimony while plaintiff resides at the former marital home in light of the provision incorporating Lepis in paragraph three of the JOD.

### III.

### A.

Defendant argues the restraints imposed in the JOD should have been dissolved pursuant to Carfagno v. Carfagno, 288 N.J. Super. 424 (App. Div. 1995) or, alternatively, Rule 4:50-1.  We disagree.

Defendant's reliance on Carfagno, though understandable,[3] is misplaced as that case governs dissolution of final restraining orders entered pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25–17 to –35. See Carfagno, 288 N.J. Super. at 430. However, the restraints in this case were not entered pursuant to the PDVA. Rather, the court entered an interlocutory restraining order pursuant to Rule 4:52-2 that was voluntarily memorialized in the parties' amended dual final JOD. Accordingly, Carfagno is inapposite to the facts of this case.

Nonetheless, defendant also argues the restraints should be dissolved under Rule 4:50–1 because "it is no longer equitable" to restrain him from contacting his children. This claim implicates Rule 4:50–1(e), which confers discretion upon the court to "relieve a party . . . from a final judgment or order" if the court finds "it is no longer equitable that the judgment or order should have a prospective application . . . ." In addition, though defendant does not state explicitly that another subsection of the Rule entitles him to relief, liberally construing his pro se brief, see Estelle v. Gamble, 429 U.S. 97, 106 (1976); Rubin v. Rubin, 188 N.J. Super. 155, 159 (App. Div. 1982),

---

[3]  At the April 14, 2016 hearing, the second motion judge incorrectly advised defendant, "you have to go through a Carfagno application if you want to have communication concerning your children."

defendant seems to invoke Rule 4:50–1(f), which permits relief for "any other reason justifying relief from the operation of the judgment or order."

The standard governing Rule 4:50–1(e) requires the moving party to prove "events have occurred subsequent to the entry of a judgment that, absent the relief requested, will result in 'extreme' and 'unexpected' hardship." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 285 (1994) (quoting Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977)). "That burden is imposed in order to overcome the courts' interests in orderly procedures and the finality of judgments." Id. at 286. Similarly, given "the importance that we attach to the finality of judgments," to obtain relief under Rule 4:50–1(f) the movant must prove "truly exceptional circumstances are present." Ibid. (quoting Baumann v. Marinaro, 95 N.J. 380, 395 (1984)). The trial court's ruling under Rule 4:50–1 is entitled to "substantial deference, and should not be reversed unless it results in a clear abuse of discretion." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012).

Defendant's assertion that the restraints have "done a great deal of damage" to him and his relationships with his children "for no bona fide reason" does not establish that "unexpected" hardship will result from continued restraint, see Little, 135 N.J. at 285, or that "truly exceptional

23

circumstances" warrant relief, see Guillaume, 209 N.J. at 467. The reason the restraints have had continuing application is that they were incorporated into the final judgment of divorce by unopposed amendments. As amended, the JOD unequivocally provides that the incorporated restraints "shall remain in full force [and] effect . . . and shall be complied with by the parties in all respects," except for certain provisions deemed "moot and therefore vacated."

Defendant also alleges his children's certifications, which plaintiff submitted in opposition to the motion, and in which the children maintained they did not want the restraints vacated, constituted inadmissible hearsay and that the trial court erred in relying on those certifications in denying dissolution of the restraints. However, even if we were to assume the certifications were inadmissible hearsay, defendant's argument ignores the fact that he bore the initial burden of proving dissolution was warranted based on extreme and unexpected hardship under Rule 4:50–1(e), see Little 135 N.J. at 285, or "truly exceptional circumstances" under Rule 4:50–1(f), see Guillaume 209 N.J. at 467.

Here, the court considered defendant's hearsay certifications provided by his friends and acquaintances, which defendant referred to as character references, but the court found defendant's "character is not an issue this case."

24

Instead, the court determined the issue was whether defendant had shown "a change in circumstances which would change" the children's and plaintiff's desire to remain "in protected status." After considering defendant's arguments for dissolution of the restraints and plaintiff's opposition, and the children's certifications, the court determined there was not a significant change in circumstances since the JOD was entered.

The original circumstances giving rise to the interlocutory restraints involved defendant's unsettling text messages to the children sent during the underlying divorce proceedings. The children did not respond to the messages, but showed them to plaintiff, and the incident resulted in a police investigation and psychological evaluations. In the rider to the original order to show cause, the court "exercis[ed] its equitable powers in light of the submissions made" regarding those events and restrained defendant from contacting plaintiff or the children until further court order. The parties then memorialized those restraints in their dual final JOD, as amended. After reviewing all the submissions, we conclude the court's determination that defendant failed to

25

make "a showing under Rule 4:50-1 warranting" dissolution of the restraints was not an abuse of discretion.[4]

B.

Defendant also maintains the trial court erred in denying his application to be appointed guardian ad litem for his children. We disagree.

A guardian ad litem's function is to protect the interests of a minor or allegedly incompetent adult in a particular litigation. S.T. v. 1515 Broad Street, LLC, 455 N.J. Super. 538, 553 (App. Div. 2018) (explaining a guardian ad litem's function "is merely 'to insure the protection of the rights and interests of a litigant who is apparently incompetent to prosecute or defend the lawsuit'" (quoting In re S.W., 158 N.J. Super. 22, 25-26 (App. Div. 1978))); Julius v. Julius, 320 N.J. Super. 297, 309 (App. Div. 1999) (distinguishing a guardian ad litem from a guardian of person or property). The trial court's

---

[4] Further, Rule 4:50–1 motions seeking relief under subsections (e) and (f) must "be made within a reasonable time . . . ." R. 4:50–2. "What constitutes a reasonable time is . . . dependent on the totality of the circumstances." Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 4:50–2 (2019). Defendant filed his motion in December 2016, more than three years after the JOD's second amendment. Because we conclude defendant did not satisfy Rule 4:50–1, we need not address whether he made his application within a reasonable time of the JOD's September 2013 amendment.

ruling on an application to appoint a guardian ad litem is entitled to deference absent an abuse of discretion. J.B. v. W.B., 215 N.J. 305, 333 (2013).

At the time defendant sought to be appointed guardian ad litem, his children were nineteen and twenty-one years old and were successfully attending college. Defendant did not allege either child was incompetent or had any psychological or physical infirmity requiring the appointment of a guardian ad litem. The court correctly denied defendant's application.

C.

Defendant claims that because plaintiff has "refused" to conduct the coin toss to allocate "disputed" personalty, he is entitled to compel her performance of the agreement. He also maintains the judge erred in applying "some operation of laches" to his claim. Again, we disagree.

"[T]he Superior Court has power to direct the specific performance of the terms of husband-wife support agreements to the extent that they are just and equitable." Schlemm v. Schlemm, 31 N.J. 557, 581–82 (1960). Generally, "[t]his discretionary power is not exercised . . . in favor of a [party] unless it is evident that such party has been ready, desirous, prompt and eager to fulfill and perform his or her obligations under the terms of the contract." Mayo v. Borovsky, 135 N.J. Eq. 447, 447–48 (Ch. 1944). We will not disturb the trial

court's decision to compel or deny specific performance absent an abuse of discretion. Weisbrod v. Lutz, 190 N.J. Super. 181, 186 (App. Div. 1983).

As to the JOD's coin-flip provision for allocating the parties' personalty, using the second amended September 2013 JOD as the reference point, by mid-October 2013 the list should have been compiled. The trial judge found:

> This [was] 2013. We are now in 2017. There is a previous [o]rder of the [c]ourt [that] says comply, do your inventory, get your stuff out. [Defendant] was over there. I have no idea what's there that remains. But it's all attached as Exhibit L by [defendant] with the history of what went on here.
>
> I do not intend to order anything other than which had previously been ordered. Those [o]rders of the [c]ourt remain in full force and effect until [they are] modified by another [o]rder . . . . [It was] 2013. [Defendant] had forty-five days to file an appeal from the time of the [j]udgment. That's denied.

As an initial observation, defendant failed to include the exhibit referenced by the motion judge in the record on appeal and has not otherwise established that he timely completed the list. Accordingly, without any support in the record that defendant complied with his obligations under the JOD and served a timely list of the personalty upon plaintiff's counsel, we discern no abuse of discretion by the trial court in not compelling the coin toss at this late date.

A-4873-15T1

Further, the trial court did not abuse its discretion in considering the untimeliness of defendant's application as grounds for denying specific performance. Defendant was required to provide the list to plaintiff's counsel in 2013, and if defendant was unable or prevented from inventorying the former marital home, he should have sought relief at that time. Instead, defendant filed his application on December 9, 2016, more than three years later. Three years of delay does not demonstrate a "prompt and eager" desire to fulfill contractual obligations. See Mayo, 135 N.J. Eq. at 447–48.

### D.

Finally, defendant contends the court erred in denying his motion to compel plaintiff to execute certain legal documents necessary for defendant to reduce his $2,000,000 life insurance policy to the minimum $600,000 required under the JOD. We disagree.

The relevant JOD provision defendant seeks to enforce provides that he must "maintain at least $600,000.00 of life insurance to secure his alimony and child support obligations which will be at his expense. . . . Plaintiff shall cooperate in respect of executing an[y] paperwork necessary to effectuate this provision." The court found defendant failed to produce adequate proofs to support his claim that he was a named insured on a $2,000,000 life insurance

policy. While defendant's appendix includes an affidavit of insurance coverage that was filed with the Family Part on September 9, 2011, thus pre-dating the JODs, it does not appear that defendant provided the court with this affidavit or any current proof of an insurance policy in connection with his motion. Instead, defendant faxed an uncertified letter to the judge nine days before the hearing. At best, the letter establishes secondary proof of insurance. Defendant may seek relief in the trial court on remand once he obtains and furnishes to the court competent proof of the existence of such a policy.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION